524 A.2d 773

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**William Henry PROCTOR.**

**Misc. (Subtitle BV) No. 5, Sept. Term, 1986.**

Court of Appeals of Maryland.

May 5, 1987.

Melvin Hirshman, Bar Counsel and Kendall R. Calhoun Asst. Bar Counsel, Annapolis, for Attorney Grievance Com'n of Maryland.

Norris C. Ramsey, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

McAULIFFE, Judge.

This disciplinary proceeding involves the question of the appropriate sanction to be applied in the case of an attorney found to have been in possession of cocaine and to have possessed marijuana in sufficient quantity to indicate an intent to distribute it.

William Henry Proctor, 41, was admitted to the bar of this State in June 1980, having previously been admitted to the Pennsylvania bar in April 1973. Although he practiced law in Pennsylvania, and has occasionally represented clients within this State, he does not now maintain an office for the practice of law. Rather, he is employed as an Associate Professor of Business Management at Morgan State University, and as a manager with Hallman Industries, a distributor of hosiery.

The charges against Respondent grew out of a search of his home conducted by the Baltimore City Police Department on October 18, 1984, pursuant to a search warrant. As a result of information and evidence obtained through that search, a criminal information was filed, charging Respondent with two counts of possession of controlled dangerous substances (cocaine and marijuana) and one count of possession of marijuana in sufficient quantity to indicate an attempt to distribute. Respondent pled guilty to the charge of possession of cocaine and, on January 29, 1985, was granted probation before judgment pursuant to Md. Code (1957, 1982 Repl.Vol., 1986 Cum.Supp.) Art. 27, § 292, and placed on two years probation. Thereafter, the Attorney Grievance Commission filed a petition for disciplinary action, alleging violations of subsections 1 through 6 of Disciplinary Rule 1–102(A). Judge William M. Nickerson of the Circuit Court for Baltimore County heard the matter, and found by clear and convincing evidence that "Respondent did possess both marijuana and cocaine in October, 1984, that he personally used both drugs and that his possession of marijuana on October 18, 1984, was with the intent to distribute." Judge Nickerson concluded that Respondent had thereby violated DR 1–102(A)(3) (engage in illegal conduct involving moral turpitude), DR 1–102(A)(6) (engage in conduct that reflects on fitness to practice law), and *ipso facto*, DR 1–102(A)(1) (violation of a disciplinary rule).

Respondent filed exceptions together with his suggestion that an appropriate sanction under the circumstances would

be a reprimand. Respondent does not specifically except to Judge Nickerson's findings of fact, but at the same time insists he neither dealt in drugs nor harbored any intent to do so. He does except to the conclusion of law that possession of marijuana in sufficient quantity to indicate an intent to distribute constitutes conduct involving moral turpitude, and he points out that he has not been convicted of any crime. Although we acknowledge that Respondent has not been convicted of a crime and that there has been no finding that he actually sold or distributed drugs, we do not otherwise agree with his contentions.

■ Resolution of this case, and particularly the determination of an appropriate sanction, requires careful attention to the specific facts that have been proven and the conclusions that flow from those facts with respect to the level of culpability of this Respondent. Without in any way minimizing the serious nature of the offense of possession of a controlled dangerous substance with the intent to distribute, we recognize that the breadth of the spectrum of conduct that will support a finding of this criminal misconduct is quite substantial. Distribution is broadly defined[1], and may consist of the sale of narcotic drugs for hundreds of thousands of dollars, or the giving of a marijuana cigarette to a friend. Just as the actual level of involvement of a perpetrator, and not the label of the offense, must control the sentence in a criminal proceeding, so too must the precise culpability of an individual respondent be considered in fashioning an appropriate disposition in a disciplinary proceeding.

The search warrant in this case was issued upon the application and affidavit of Detectives Shea and Cannavale of the Baltimore City Police Department.

---

**1.** Section 227(*l*) of Art. 27 defines "distribute" to mean "to deliver other than by dispensing a controlled dangerous substance." Section 277(i) defines "deliver" to mean "the actual, constructive, or attempted transfer, exchange, or delivering of a controlled dangerous substance from one person to another with or without remuneration, whether or not there exists an agency relationship."

In addition to setting forth the experience and qualifications of the officers, the affidavit disclosed the following information. One month earlier, a "confidential source" [2] advised the detectives that the Respondent "is selling cocaine and marijuana," and furnished accurate information concerning the automobiles driven by Respondent, and their tag numbers. The detectives observed the described vehicles in the driveway of Respondent's home, and verified Respondent's occupancy at that address. On the day prior to the execution of the affidavit the detectives examined the trash discarded from Respondent's home and found therein one burned handrolled cigarette "containing green-brown leafy substance." There was no report of an analysis of this cigarette, but the detectives opined that it was "suspected marijuana" and observed that the handrolled cigarette was "consistent with the way that marijuana is used."

The affidavit also indicated that Respondent had reported a breaking and entering of his premises two years earlier, involving the theft of a .22 caliber handgun. Finally, the affidavit disclosed that Respondent had been arrested in January 1984 for burglary and related offenses, and that there had been no disposition of those charges.

Upon executing the search warrant, police officers seized a small quantity of cocaine residue and approximately eight ounces of marijuana. The cocaine residue was found in a cocaine "snorter" and in a vial, which were found with five cut straws and a small mirror in a chest of drawers in Respondent's bedroom. The eight ounce quantity of marijuana was recovered from various containers and locations as follows: 1) in a large plastic bag located in Respondent's chest of drawers, beneath his undershirts; 2) in a plastic bag and in a white bottle located near the bar in the basement; 3) in two plastic bags contained within a yellow bag in the freezer; and, 4) in a plastic bag located in a dining room drawer. Additionally, the police seized but did

---

**2.** The affidavit contained no information establishing the reliability of the confidential source, or otherwise relating to his or her credibility.

not analyze two plastic "pound" bags containing suspected marijuana residue, one vial containing seeds, one handrolled cigarette, and two handrolled cigarette butts. Finally, they seized one box of cigarette papers from Respondent's bedroom and one box of plastic baggies from the kitchen.

At his hearing before Judge Nickerson, Respondent admitted limited prior use of drugs, but claimed no recent use [3] and a lack of awareness of the presence of the drugs in his bedroom. As to the marijuana found at other places within the home, Respondent denied having placed it there or knowing who did. In his answers to interrogatories, Respondent said that a friend resided with him at the time of the search. However, that friend testified on behalf of Respondent, and denied having brought any drugs into the home. The friend did indicate that he and the Respondent occasionally had guests in the home, and implied that these persons may have been the source of the drugs.

Detective Sergeant Cannavale, who had been assigned to the investigation of narcotics in the Criminal Investigation Division since 1975, and who had extensive training and experience in narcotics investigations, testified that the number and size of the bags that did contain, or in his opinion had contained marijuana, indicated the probability of distribution rather than personal consumption. When questioned about certain facts that militated against a conclusion of distribution—no unusual vehicle or pedestrian traffic had been observed at the home, no scales or sieves were found, no large sums of money or documentation of illegal transactions were found, and no materials for packaging and distributing were found with the exception of one container of baggies found in the kitchen—Detective Cannavale responded that "it looked like Mr. Proctor, or whoever,

---

**3.** Respondent testified he had experienced intestinal problems in June 1984, and had probably discontinued any drug use at that time. At an earlier hearing before the Inquiry Committee, he testified he had smoked "years ago" but had stopped "a long time ago."

was selling small amounts of marijuana or distributing small amounts. He could be giving it away."

■ Article 27, § 286(a)(1) makes it unlawful for any person:

> [t]o manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance.

Respondent, although pointing out that he has not been convicted of this offense and maintaining that he neither distributed nor had any intent to distribute a controlled dangerous substance, nevertheless concedes that the evidence before Judge Nickerson was sufficient to sustain his finding that Respondent possessed marijuana with the intent to distribute it, and thus violated the proscription of this section of the criminal law article. As we made clear in *Attorney Griev. Comm'n v. Deutsch*, 294 Md. 353, 366, 450 A.2d 1265 (1982), a criminal conviction is not required to find a violation of DR 1–102(A)(3). What is required is clear and convincing evidence of conduct that constitutes a commission of the offense, and we will not disturb Judge Nickerson's finding to that effect in this case.

On the more difficult question of whether this offense is one that involves moral turpitude, we conclude that it is. Certainly, illegal distribution of controlled dangerous substances is a serious offense against society, and possession with intent to distribute is but a short step removed from that in terms of culpability. The Legislature grouped the offenses of distribution and possession with intent to distribute within a single section of the Code, and classified the offenses as felonies. Moreover, the Legislature fixed the same penalty for both possession with intent to distribute and distribution. Where marijuana is involved, the penalty for a first offense is imprisonment for not more than five years, or a fine of not more than $15,000 or both. Article 27, § 286(b)(3). This Court said in *Braverman v.*

*Bar Assn. of Balto.,* 209 Md. 328, 344, 121 A.2d 473, *cert. denied,* 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed.2d 51 (1956), that moral turpitude "consists of an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

 Recognizing the broad spectrum of culpability that may exist in violations of Art. 27, § 286(a)(1), depending upon the particular facts of each case and the nature of the controlled dangerous substance involved, we conclude that although conduct in violation of this section will ordinarily involve moral turpitude, each case must be decided on its own facts. Considering the particular facts of this case, we conclude, as did the trial judge, that the illegal conduct engaged in by Respondent involved moral turpitude.

██ Turning to the question of sanction, we repeat what Judge Digges said for the Court in *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549–50, 318 A.2d 811 (1974):

A court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary procedures have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public.... In a proceeding such as this, therefore, the underlying question is "whether, after the conduct of this man, it is proper that he should continue [as] a member [the legal] profession...." *Ex parte Brownshall,* 2 Cowp. 829 (1778). In the absence of a compelling exculpatory explanation, we think that the answer to this question must be no when an attorney is found guilty of a crime which is deemed to involve moral turpitude and the offense entails the employment of dishonesty, fraud, or deceit which is perpetrated to enrich the offending attorney or to enhance his

own well-being at the expense of his client, the state, or any other individual. (Citation omitted.)

Fraud, deceit and dishonesty within the meaning of *Agnew, supra,* are not present in this case, but the Respondent has been engaged in serious criminal conduct. Standard 5.11 of the Standards for Imposing Lawyer Sanctions, adopted by the American Bar Association in February 1986, provides that:

Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; *or the sale, distribution or importation of controlled substances;* or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. (Emphasis added.)

In this case, considering the nature of the controlled dangerous substances involved, the absence of a finding of actual distribution, and all other surrounding circumstances, we determine that disbarment is not appropriate, but that a severe sanction is required. Accordingly, we direct that William Henry Proctor be forthwith suspended from the practice of law in this State for a period of one year. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM HENRY PROCTOR.