766 A.2d 1028

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

**Pamela Louise SHAW.**

**Misc. AG No. 75, Sept. Term, 1997.**

Court of Appeals of Maryland.

Argued Sept. 10, 1998.

Reargued Dec. 4, 2000.

Decided Feb. 13, 2001.

2

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Linwood Hedgepeth, Reisterstown, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

Reargued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and LAWRENCE F. RODOWSKY (retired, specially assigned) JJ.

RAKER, Judge.

The Attorney Grievance Commission, through Bar Counsel, charged Pamela Louise Shaw (Respondent) with violating Maryland Rules of Professional Conduct Rule 1.1 (Competence),[1] Rule 1.5 (Fees),[2] Rule 8.1 (Bar Admissions and Disciplinary Matters),[3] and Rule 8.4(a), (c), and (d) (Misconduct).[4]

---

**1.** Rule 1.1 (Competence) states:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**2.** Rule 1.5 (Fees) states, in pertinent part:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**3.** Rule 8.1 (Bar admissions and disciplinary matters) states, in relevant part:

Pursuant to Maryland Rule 16–709(b), we referred the charges to Judge Richard T. Rombro of the Circuit Court for Baltimore City to conduct a hearing and make findings of fact and proposed conclusions of law.

After conducting an evidentiary hearing, Judge Rombro concluded that Respondent had violated Rules 1.1, 1.5, 8.1, and 8.4(c) and (d).[5] In this Court, Respondent excepted to several of the hearing judge's findings of fact, arguing that they were clearly erroneous. As a threshold matter, Respondent excepted to Judge Rombro's conclusion that, although on the inactive list, she was subject to attorney discipline. She excepted to the hearing judge's findings that she failed to respond to a lawful demand of Bar Counsel, that she held herself out as an attorney, that she had little knowledge of the workings of the stock market, that the fee she charged for her services was inordinate, and that she had engaged in the practice of law. She further excepted to the hearing judge's conclusions of law that she violated Rules 1.1, 1.5, 8.1, and 8.4(c) and (d).

In *Attorney Grievance v. Shaw*, 354 Md. 636, 732 A.2d 876 (1999) (*Shaw I* ) (remanding case for further proceedings), we overruled two of Respondent's exceptions: (1) that she was

---

[A] lawyer in connection with ... a disciplinary matter shall not:

\* \* \* \* \* \*

(b) knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**4.** Rule 8.4 (Misconduct) states, in pertinent part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice....

**5.** We will not reiterate Judge Rombro's initial factual findings supporting his conclusions of law, as they are set out in *Attorney Grievance v. Shaw*, 354 Md. 636, 732 A.2d 876 (1999) (*Shaw I* ).

not subject to discipline by this Court, and (2) that she failed to respond to a lawful demand of Bar Counsel. We held that she was subject to the disciplinary authority of this Court. *See id.* at 647, 732 A.2d at 881. As to her failure to respond to a lawful demand of Bar Counsel, we noted that, other than stating her exception, she did not further pursue the matter. She failed to meet her burden of proving factual matters in defense of her position by the preponderance of the evidence, and, thus, we overruled her exception. *See id.* at 646, 732 A.2d at 881. We further held that Judge Rombro's finding that Respondent held herself out as an attorney was clearly erroneous. *See id.* at 652, 732 A.2d at 884. In our view, the use of "Esq." in correspondence alone was insufficient to support a finding that the Respondent held herself out as an attorney. *See id.* We could not "determine whether an attorney-client relationship was formed between Ms. Towson and the respondent; it is at least possible that, after analyzing the facts and circumstances under which the guardian offered the assignment, and the respondent accepted it, the hearing court could have found that one was entered into." *Id.* at 653, 732 A.2d at 884.

We also considered, in *Shaw I,* the hearing judge's finding that Respondent violated Rule 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. *See id.* at 656, 732 A.2d at 886–87. The sole support for this finding was "respondent's aforementioned inexperience in undertaking to perform the very task for which the hearing court determined she was ill prepared, but nevertheless holding herself out as competent, presumably because she was a lawyer, when she in fact was not. The findings, thus, may be colored by the hearing court's conclusion that respondent was holding herself out as a lawyer and undertook the task as a lawyer." *Id.* Because the issue of whether Respondent's conduct was sanctionable was inextricably tied to her status as an attorney, we remanded the matter to the hearing judge for further findings on that issue. *See id.* at 657, 732 A.2d at 887.

On remand, Judge Rombro held a hearing and considered whether Respondent held herself out as a lawyer. The Supplemental Report After Remand reads as follows:

"This Attorney Grievance matter is before this Court on remand with instructions to determine whether there are additional facts in the record to support this Court's conclusion that the Respondent had been engaged in the practice of law.

"This Court will not review the facts which were set out in its earlier opinion and discussed by the Court of Appeals in its opinion.

"The Court of Appeals stated that this Court had found that the Respondent held herself out as a lawyer and had performed legal work on behalf of the guardian of the estate. The Court of Appeals then noted, "The only support the Court gave for the former finding is the Respondent's use of the term 'Esq.' in correspondence with the disabled person's guardian."

"The Court of Appeals had quoted this Court's findings of fact and conclusions of law in the following statement:

"2. That the Respondent held herself out as an attorney when she was seeking to do work on the *Berger* matter. The Court notes that her letter of March 1, 1993, . . . is signed "Pamela L. Shaw, Esq."

"This Court was remiss in not setting forth in detail all of the reasons for believing that the work performed was legal work and that the Respondent had held herself out as an attorney. This Court must say, with all due deference, that it believed that the status of the Respondent as a lawyer in this matter was so clear as to need no amplification of reasons. Therefore, this Court merely "noted" that Respondent used the title "Esq."

"Subsequent to remand, this Court held an additional hearing at which the Respondent again testified and counsel argued their respective positions.

"This Court now restates its prior finding and conclusion of law that the Respondent did in fact hold herself out as a

lawyer and that the work performed was legal work. This Court relies on the following findings and inferences:

"1. The Respondent submitted bills which, in one instance, was entitled "Fee for professional services rendered." In neither the original hearing nor the hearing on remand did the Respondent explain what profession, other than legal, the bill represented.

"2. At least one of the bills notes that it is for "meeting with guardian and review of tax documents: $500.00." Review of tax documents, under the circumstances of this case, is clearly a legal undertaking.

"3. Finally, and in addition to the above, the use of the designation "Esq." The Court of Appeals held that this does not "automatically create an attorney/client relationship," but did not say it was not a factor to be considered.

"The record in this case discloses that the attorney for the Respondent requested that this Court recuse itself since the Court was familiar with the underlying Estate. The knowledge that this Court had of the Estate was, however, a matter of public record. Any trial judge hearing this matter would certainly have made himself or herself aware of the administration of the guardianship.

"The unhappy fact is that the Respondent is the third lawyer to be charged by the Attorney Grievance Commission in this same Estate. The attorney who retained the services of the Respondent was disbarred; her successor was disbarred and incarcerated as a result of substantial theft from the Estate. In short, the administration of the Estate of Mr. Berger has been a stain on the profession.

"Respondent, although nominally retained by Ms. Towson, knew that the actual client was a person under a disability for whom the Court had appointed a guardian to handle his affairs. When dealing with such a person, an attorney should be held to an extremely high degree of attention and professionalism. Indeed, the words of Justice Cardozo, when he was Chief Judge of the Court of Appeals of New York, should be the compass followed by attorneys:

Many forms of conduct permissible in a work-a-day world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

*Meinhard v. Salmon*, 249 N.Y. 458 [164 N.E. 545] (1928).

"For the reasons stated in the original Opinion and elaborated upon here, this Court believes that the clear evidence discloses that Respondent violated the disciplinary rules as charged by the Commission."

Bar Counsel filed no exceptions in this Court.[6] Respondent again filed exceptions in this Court to both the hearing judge's findings of fact and conclusions of law. She also excepts to the hearing judge's refusal to recuse himself.

Respondent argues that the use of the phrase "Fee for professional services rendered" is not evidence of legal work and that she was acting as a consultant, not as an attorney. Respondent also argues that the review of tax documents is not necessarily legal work, and there is no evidence to demonstrate that it was legal work under the circumstances of this case. Finally, Respondent argues that any member of the Maryland Bar is entitled to use the designation "Esq.," regardless of the profession they currently practice. Therefore, Respondent's use of "Esq." is of little, if any, significance. On the issue of Judge Rombro's failure to recuse himself, Respondent argues that it was improper for him to consider the fact that, before Respondent, two other attorneys had been disciplined for their actions in dealing with the same Estate. Respondent also suggests that Judge Rombro's statement that the administration of the Estate of Mr. Berger has been a "stain on the profession" is evidence of racial prejudice, given that the two attorneys disciplined previously were black.

---

6. Bar Counsel points out that Judge Rombro was incorrect in stating "the attorney who retained the services of the Respondent was disbarred" and asks us to correct the record to reflect that the attorney was *suspended,* not disbarred. The record stands corrected.

We consider first Respondent's exception to Judge Rombro's denial of her motion to recuse himself. At the evidentiary hearing, Respondent requested that Judge Rombro recuse himself, alleging that he had knowledge of the underlying guardianship. Judge Rombro denied the motion. Respondent did not raise the recusal issue in *Shaw I* and, thus, we did not address that ruling. Respondent excepts to that ruling in this proceeding, and we shall consider her exception.

Respondent moved for recusal on the grounds that Judge Rombro had a prior connection with the Estate of John W. Berger and was familiar with alleged wrongdoings with the Estate. He was the circuit court judge who ordered an audit of the case when Michele Towson was the guardian for the Estate. In his denial of the recusal motion, Judge Rombro stated that, although he did in fact have some prior connection with the Estate as a judge, he had "no preconceived ideas about Ms. Shaw, about her role, or anything at all to me."

In her exceptions before this Court, Respondent argues that Judge Rombro should have recused himself because of his prior connection with the Berger Estate. Additionally, she suggests that the hearing judge's comments in the Supplemental Report After Remand are evidence of racial bias. She argues that the hearing judge improperly considered that two prior attorneys that dealt with the Estate had been disciplined and that the history of the administration of the Berger Estate, and, particularly, the conduct of the two prior lawyers, is not relevant. In her exception, she states:

> To use as evidence against respondent the fact that other attorneys that dealt with the estate were disciplined is beyond the pale. It is a matter of public record that the attorneys he refers to are black. If one uses the trial court's way of drawing inferences, one could say that its "stain" on the profession remark is evidence of racial prejudice.

This exception is without merit. Judge Rombro correctly pointed out that the issue of recusal in attorney disci-

pline matters is within the province of the Court of Appeals. *See Attorney Griev. Comm. v. Hollis*, 347 Md. 547, 559, 702 A.2d 223, 229 (1997) (noting that in these types of proceedings, the matter of recusal is within the province of the Court of Appeals). Moreover, the hearing judge's remarks must be read in context. His comments regarding the conduct of the two prior attorneys and that the administration of this Estate is a "stain on the profession" were merely comments on the obvious, *i.e.*, the overall improper handling of this legal matter and not an expression of racial animus.

 "[T]here is a strong presumption in Maryland, and elsewhere, that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified." *Jefferson–El v. State*, 330 Md. 99, 107, 622 A.2d 737, 741 (1993) (citations omitted). The decision to recuse oneself ordinarily is discretionary and will not be overturned except for abuse. *See id.* The party requesting recusal has a heavy burden to overcome the presumption of impartiality and must prove that the judge has a personal bias or prejudice against him or her or has personal knowledge of disputed evidentiary facts concerning the proceedings. *See id.* As to allegations of bias based on knowledge gained from a judicial proceeding, this Court stated:

> Only bias, prejudice, or knowledge derived from an extrajudicial source is "personal." Where knowledge is acquired in a judicial setting, or an opinion arguably expressing bias is formed on the basis of information "acquired from evidence presented in the course of judicial proceedings before him," neither that knowledge nor that opinion qualifies as "personal."

*Id.* (citations omitted). Respondent's allegation of bias is based on knowledge the hearing judge presumably obtained in another judicial proceeding. Such knowledge does not qualify as "personal" knowledge sufficient to require recusal. There is no evidence in this record to support Respondent's excep-

tion, and, accordingly, Judge Rombro's refusal to recuse himself was not an abuse of discretion.

■ After considering the Supplemental Report After Remand, we overrule Respondent's exception to the hearing judge's finding that she engaged in the practice of law. Judge Rombro outlined facts beyond Respondent's use of "Esq." that satisfy the clear and convincing standard in attorney discipline matters.

■ Finally, Respondent excepts to the hearing judge's findings and conclusions that she violated Rules 1.1, 1.5, 8.1, and 8.4(c) and (d). Respondent merely stated her exceptions, however, and then did not further pursue them. Without more, she has failed to meet her burden of establishing factual matters in defense of her position by the preponderance of the evidence. *See Attorney Grievance v. Sheridan*, 357 Md. 1, 17 18, 741 A.2d 1143, 1152 (1999). The exceptions are overruled.

■ We next address the appropriate sanction for the established misconduct. The purpose of disciplinary proceedings is not to punish the errant attorney, but to protect the public. *See Attorney Grievance v. Dechowitz*, 358 Md. 184, 192, 747 A.2d 657, 661 (2000). Our duty is discharged by imposing a sanction that is appropriate in light of the nature and gravity of the violation. *See Attorney Grievance v. Tolar*, 357 Md. 569, 584–85, 745 A.2d 1045, 1053 (2000). The proper sanction, therefore, is determined by the facts and circumstances of the particular case. *See id.* at 585, 745 A.2d at 1053.

Bar Counsel urges this Court to disbar Respondent, basing his recommendation on Respondent's conduct in submitting documents to the guardian of the Estate of John Berger that were essentially valueless and were submitted only for the purpose of collecting a fee, all the while knowing that these documents would be used by the guardian for the administration of the Estate. In addition, Respondent retained $18,500.00 in fees, which represents such compelling dishonesty that she should be disbarred. Respondent has offered no suggestion as to an appropriate sanction.

Respondent failed to cooperate with Bar Counsel, she performed services in an incompetent manner, she charged an excessive fee, and she engaged in conduct prejudicial to the administration of justice. It is the view of this Court that the appropriate sanction is that Respondent be suspended from the practice of law for a period of one year, effective thirty days from the filing of this opinion. *See Attorney Griev. Comm'n v. Korotki*, 318 Md. 646, 672, 569 A.2d 1224, 1237 (1990) (attorney suspended for period of eighteen months for charging excessive fee); *Attorney Griev. Comm'n v. Kerpelman*, 292 Md. 228, 245, 438 A.2d 501, 510 (1981) (attorney suspended for period of one year for charging excessive fee).

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST PAMELA LOUISE SHAW.*

BELL, Chief Judge, Dissenting and Concurring.

In *Attorney Grievance v. Shaw*, 354 Md. 636, 732 A.2d 876 (1999), this Court held that the finding by the hearing judge that the respondent held herself out as an attorney was clearly erroneous, *id.* at 652–53, 732 A.2d at 884, being based solely on the respondent's. use of "Esq." in correspondence. *Id.* We noted, however, that we could not "determine whether an attorney-client relationship was formed between Ms. Towson and the respondent; it is at least possible that, after analyzing the facts and circumstances under which the guardian offered the assignment, and the respondent accepted it, the hearing judge could have found that one was entered into." *Id.* at 653, 732 A.2d at 884.

This Court also addressed the hearing judge's findings that the respondent violated Rule 8.4(c), engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, by holding herself out as competent in the area of stock evalua-

tion and charging an excessive fee for the service she rendered, and Rule 1.1, competence, by undertaking a matter in which she had no experience. As to these findings, we held:

"The only support for these findings is the respondent's aforementioned inexperience in undertaking to perform the very task for which the hearing judge determined she was ill prepared, but nevertheless holding herself out as competent, presumably because she was a lawyer, when she in fact was not. The findings, thus, may be colored by the hearing judge's conclusion that the respondent was holding herself out as a lawyer and undertook the task as a lawyer. We have concluded that the former finding was clearly erroneous. That leaves nothing on which to support the latter finding except speculation that the respondent and the guardian were in collusion. But the hearing judge, by finding that the petitioner did not meet its burden with respect to the alleged Rule 8.4(a) violation, has rejected any such charge."

354 Md. at 656–57, 732 A.2d at 886–87. We concluded, however:

"As we have seen, our precedents indicate that lawyers are disciplined for conduct occurring when they are not practicing law only if that conduct is dishonest or is conduct that reflects adversely on the profession, not each time they may undertake tasks for which they are under qualified or may be inexperienced. The focus of this case was on the respondent's status as a lawyer and not on the quality of the conduct without regard to that status. From the hearing judge's opinion, we can not discern that the respondent's conduct, other than her violation of Rule 8.1, is sanctionable. Because we acknowledge that the record may contain evidence indicating that the respondent was practicing law or had entered into a lawyer-client relationship with the guardian, the case will be remanded for further findings in that regard."

*Id.* at 657, 732 A.2d at 887.

Rather than analyze the facts and circumstances to determine whether an attorney client relationship was entered into

between the guardian and the respondent, as it was invited to do, the hearing judge sought to supply factual support for the finding that the respondent was practicing law. In addition to the respondent's use of the designation, "Esq.," it offers only:

"1. The Respondent submitted bills which, in one instance, was entitled 'Fee for professional services rendered.' In neither the original hearing nor the hearing on remand did the Respondent explain what profession, other than legal, the bill represented.

"2. At least one of the bills notes that it is for 'meeting with guardian and review of tax documents: $500.00.' Review of tax documents, under the circumstances of this case, is clearly a legal undertaking."

I am not convinced that, singly or in combination, they add anything significant to the resolution of the case. Neither the submission of bills for professional services nor the review of tax documents is an exclusively legal matter. Indeed, many other professionals submit, and have paid, bills for professional services. That one may not, satisfactorily to the trier of fact, explain the nature of the profession for which billing is made or the trier of fact is not convinced that the particular field of endeavor is a profession, does not render the bill one for legal services, by default. As the respondent intimates, consultants submit bills for "Fee for professional services rendered" and they are not practicing law when they do so.

To be sure, under some circumstances, review of tax documents can be a legal undertaking; however, we are not told what it is about this case that makes that the case here. The mere statement that something is so does not make it so and that is all that there is here. The respondent also is correct, there is no evidence in this record to demonstrate that what the respondent did was legal work under the circumstances of this case.

I would grant the respondent's exceptions as to the findings with respect to the practice of law. With them, the violations of Rules 1.1, 1.5, and 8.4(c) and (d) would fall. The only conduct for which sanction is appropriate is then for violation

of Rule 8.1, failure to respond to a lawful demand of Bar Counsel.

The majority imposes a sanction of a one year suspension for all of the violations it upholds, in addition to Rule 8.1, Rules 1.1, 1.5, and 8.4(c) and (d). Except for the fact that it would be only for violation of Rule 8.1, I agree that the sanction of a one year suspension is appropriate.